# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DERRICK STEFAN WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 3465 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| JEFFERY SAFFOLD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Derrick Stefan Williams filed this action pursuant to 42 U.S.C § 1983 against several defendants, including Jeffery Saffold, D.D.S. in his individual capacity, alleging Defendant acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment when he extracted the wrong tooth. Presently before us is Defendant's motion for summary judgment. (Dkt. No. 73.) For the reasons set forth below, we grant Defendant's motion.

## BACKGROUND

Unless otherwise stated, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 submissions. Dr. Saffold is a dentist who provided dental treatment to Plaintiff while he was a pretrial detainee at the Will County Adult Detention Facility ("WCADF"). (Def.'s L.R. 56.1(a)(3) Stmt. of Material Facts ("Def.'s SOF") (Dkt. No. 75) ¶ 2.) As relevant here, Plaintiff visited Dr. Saffold on September 19, 2014 and October 8, 2014 in connection with his complaint about a tooth that caused him pain when he ate sweet foods. (*Id.* ¶ 12.)

At the first visit on September 19, Dr. Saffold and his assistant performed a dental examination on Plaintiff. (*Id.* ¶ 13.) As part of the examination, they visually inspected Plaintiff's teeth, and Plaintiff pointed with his finger to the tooth that was causing discomfort. (*Id.* ¶ 14.) Plaintiff contends he pointed to tooth 20, but Dr. Saffold maintains Plaintiff indicated tooth 19 was the source of his discomfort. (*Id.*; Pl.'s L.R. 56.1(b)(3) Resp. to Def's SOF ("Pl.'s Resp. to SOF") (Dkt. No. 80) ¶ 14.) As an additional diagnostic tool, Dr. Saffold also took x-rays of the area surrounding the affected tooth. (SOF ¶ 15.) Dr. Saffold's contemporaneous records state "seen [sic] patient for dental request exam, patient [complained of] left posterior toothache pointing to #19." (Sept. 19, 2014 Dental Progress Note (Dkt. No. 80–7).) With respect to tooth 19, Dr. Saffold recorded "no decay seen visually and minimal swelling" and indicated the x-ray "reveals periodontal vertical defect with #19 interproximal #19–20." (*Id.*) Dr. Saffold prescribed pain medication and antibiotics and scheduled a follow-up appointment two weeks later to evaluate whether an extraction was necessary. (*Id.*) Dr. Saffold testified at his deposition that during the September 19 exam, he observed the root of tooth 19 was exposed, and Plaintiff had lost "a large mass of bone" that held tooth 19 on both sides. (SOF ¶¶ 16, 18.) He testified that he found no similar problems with tooth 20, and determined it was "fine." (*Id.* ¶ 17.)

On October 8, 2014, Plaintiff returned to see Dr. Saffold for a follow-up appointment. (*Id.* ¶ 22.) Plaintiff asserts that he continued to experience pain when he ate sweets, and he expected that Dr. Saffold would extract tooth 20 during the visit. (Pl.'s Resp. to SOF ¶ 22.) Dr. Saffold, however, believed Plaintiff indicated that tooth 19 was still causing him pain. (SOF ¶ 23.) Dr. Saffold contends he again examined Plaintiff's teeth and observed the root of tooth 19 was exposed and the tooth was exhibiting signs of gum and bone deterioration.

(*Id.* 24–25.) Dr. Saffold concluded tooth 19 was causing Plaintiff's discomfort and should be extracted as no alternative treatments could be pursued. (*Id.*) Plaintiff then signed a Dental Informed Consent, which specified tooth 19 would be extracted and that Plaintiff consented to the procedure. (*Id.* ¶¶ 27–31.) Dr. Saffold and his assistant also signed the consent and affirmed they "explained the matters indicated above relating to the operation and/or procedure and the risks, consequences, and alternatives," and that "[t]he inmate appeared to understand and consented to the procedures described." (*Id.* ¶¶ 32–33.) Dr. Saffold then proceeded to numb the affected area and extract Plaintiff's tooth 19. (*Id.* ¶ 35.) Plaintiff was given pain medication and discharged. (*Id.* ¶ 36.)

Later the same day, Plaintiff filed a grievance, complaining that Dr. Saffold had extracted the wrong tooth. (*Id.* ¶ 37.) Plaintiff asserted that Dr. Saffold should have removed tooth 20, which he alleged was the tooth causing him discomfort. (*See, e.g.*, Pl.'s to SOF ¶¶ 35–36.) Tooth 20 remains in Plaintiff's mouth, and he testified he has not sought to have it extracted as "it don't bother me until I eat something sweet on that side," which he avoids. (SOF ¶¶ 41–42.) Plaintiff was treated by Dr. Saffold once more following the October 8 procedure in order to treat a dry socket that developed at the site of the extraction. (*Id.* ¶ 43.) The dry socket was successfully treated with medication, and Plaintiff received no further relevant care from Dr. Saffold. (*Id.*) Plaintiff was released from custody on April 26, 2016 and did not seek follow up care to have tooth 20 removed. (*Id.* ¶¶ 40–42.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "informing the district court of the

3

basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) ("A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." (citation omitted)). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). We view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor. *Id.* at 255, 106 S. Ct. at 2513; *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).

## ANALYSIS

The Eighth Amendment[1] "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'"

---

[1] Because Plaintiff was a pretrial detainee at the time of the relevant events, the Fourteenth Amendment, rather than the Eighth Amendment applies. *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). However, as "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment," we evaluate Plaintiff's claims under the Eighth Amendment framework. *Id.*

*Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)). "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display 'deliberate indifference to serious medical needs of prisoners.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291). To establish deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show that he suffered from an objectively serious medical condition, and that a state official subjectively disregarded the risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994); *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The principles applicable to determining whether a condition constitutes an objectively serious medical need "appl[y] equally to dental care." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). The Seventh Circuit has recognized that "the neglect of one's dental hygiene can, and frequently does, result in objectively serious dental and medical problems, which is illustrated by [the] need to have . . . teeth extracted." *Board v. Farnham*, 394 F.3d 469, 482–83 (7th Cir. 2005); *see also, e.g.*, *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."); *Greene v. Pollard*, 335 F. App'x 612, 614 (7th Cir. 2009) (finding tooth decay, gum infection, and dental problems interfering with eating and sleeping may rise to the level of a serious medical need). Defendant argues Plaintiff was not suffering from an objectively serious dental condition, because Plaintiff testified at his deposition that despite his contention that Dr. Saffold should have pulled tooth 20, Plaintiff never sought follow up dental care to have the tooth removed, and he testified that it "do[es not] bother him" so long as he avoids eating sweet

foods on that side of his mouth. (SOF ¶¶ 40–41.) However, we need not decide the issue because Plaintiff cannot sustain his burden of establishing Dr. Saffold was deliberately indifferent.

"To be deliberately indifferent, the defendants must have acted with 'a sufficiently culpable state of mind.'" *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Greeno*, 414 F.3d at 653). The official must be subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. However, a prisoner need not establish that "officials intended or desired the harm that transpired." *Greeno*, 414 F.3d at 653. "Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* A claim may lie where prison officials provide medical care that is inadequate "in light of the severity of the condition and professional norms." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers 'blatantly inappropriate' medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Id.* (internal citations omitted).

Thus, a prisoner may show that the prison official acted with reckless disregard through "inaction or woefully inadequate action." *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *see also Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition.'" (quoting *Greeno*, 414 F.3d at 653)). "But negligence, even gross negligence, does

6

not violate the Constitution." *McGowan*, 612 F.3d at 640; *see also Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (comparing the deliberate indifference standard to criminal recklessness, finding explaining it "requires more than negligence and it approaches intentional wrongdoing"). "Even if prison officials are aware of a substantial risk of serious harm, they are not liable if 'they responded reasonably to the risk, even if the harm was not ultimately averted.'" *Manney v. Monroe*, 151 F. Supp. 2d 976, 992 (N.D. Ill. 2001) (quoting *Walker v. Peters,* 233 F.3d 494, 499 (7th Cir. 2000)).

Plaintiff argues Dr. Saffold engaged in a "string of negligent acts" amounting to deliberate indifference in violation of Plaintiff's constitutional rights, including: (1) he deliberately pulled tooth 19 despite Plaintiff's indication that tooth 20 was causing him pain; (2) Dr. Saffold was sarcastic and was "talking and joking and not paying attention to [Plaintiff's] tooth problem, and that is why Saffold pulled the wrong tooth"; (3) Dr. Saffold's records indicate he did not perform "the proper diagnostic tests" on Plaintiff's tooth; (4) Dr. Saffold should have referred Plaintiff to a periodontist, but failed to refer him for non-medical reasons; (5) Dr. Saffold failed to "discuss his conclusions with [Plaintiff] and failed to properly advise him of alternative courses of action." (Pl.'s Mem. in Opposition to Mot. for Summ. J. ("Pl.'s Resp.") (Dkt. No. 81) at 3–4, 6.)

It is undisputed that Dr. Saffold examined Plaintiff twice in response to Plaintiff's complaints of dental pain "caused by eating sweets." (Pl.'s Resp. to SOF ¶ 12.) On the first visit on September 19, 2014, Dr. Saffold examined Plaintiff's teeth, including the area Plaintiff pointed to as causing him discomfort. (*Id.* ¶¶ 13–14.) He also took diagnostic x-rays of the area surrounding the affected tooth. (*Id.* ¶ 15.) Likewise, it is uncontested that Dr. Saffold's contemporaneous records indicated Plaintiff should return to the clinic for extraction of tooth 19

if it continued to cause pain, and he prescribed antibiotics and pain medications. (*Id.* ¶¶ 21–22.) At Plaintiff's follow up appointment on October 8, 2014, Dr. Saffold again examined Plaintiff's teeth and assessed his discomfort. (*Id.* ¶¶ 22–25.) The same day, Plaintiff signed a Dental Informed Consent, which stated that Plaintiff consented to the extraction of tooth 19 and confirmed that Dr. Saffold had explained, and Plaintiff had understood, the extraction procedure, along with the risks, consequences, and alternatives. (*Id.* ¶¶ 27–33.) Dr. Saffold then numbed the affected area and extracted tooth 19. (*Id.* ¶¶ 35–36.) Plaintiff was provided additional pain medication and left the procedure without incident, but complained later that day that Dr. Saffold had removed the wrong tooth. (*Id.* ¶¶ 36–37.) Thereafter, Plaintiff experienced a dry socket at the site of tooth 19, which Dr. Saffold successfully treated with medication. (*Id.* ¶ 43.) Plaintiff never sought follow up treatment to have tooth 20 removed. (*Id.* ¶ 42.)

From there, the parties' accounts differ. While Plaintiff appears to concede that he signed the informed consent form, he argues he did not know what he was signing, and Dr. Saffold proceeded to extract the wrong tooth. (*See id.* ¶ 27.) Plaintiff contends that he thought tooth 20 would be removed—the tooth Plaintiff believed he had pointed out to Dr. Saffold both on September 19 and October 8. (*Id.* ¶¶ 28, 30, 33–36.) Although Plaintiff signed the informed consent, he also points to the fact there are no initials under "Tooth extraction #19" in the space provided for "Patient's initials" on the consent form, and he denies that Dr. Saffold ever reviewed the informed consent form with him or explained all of the risks, consequences, and alternatives available to him. (*Id.* ¶¶ 28–35.) At the same time, however, Plaintiff asserts that Dr. Saffold's contemporaneous notes indicate a problem with *both* tooth 19 and tooth 20, and Dr. Saffold failed to advise him that he may need to have *both* teeth extracted. (Pl.'s Resp. to ¶¶ 16–19, 49.) Plaintiff also asserts Dr. Saffold was "continuously running off at the mouth" and

"joking around" while performing dental work on Plaintiff's teeth, and he did not "take the time, care and attention required" to address Plaintiff's toothache complaint. (*Id.* ¶ 39.)

Dr. Saffold testified at his deposition that in his professional medical opinion, tooth 19 needed to be extracted as a result of the exposed root and loss of "a large mass of bone" that held the tooth on both sides. (SOF ¶¶ 15–18, 24–25.) He formed his opinion after examining Plaintiff's mouth both on September 19 and October 8. He recommended extraction of tooth 19 after concluding no alternative treatments could be pursued. (*Id.* ¶¶ 22–25.) Dr. Saffold asserts he also examined tooth 20 and determined there was no reason to extract the tooth as it was "fine," meaning it was not exposed or loose, and was in "functional occlusion" (or alignment) with the corresponding top teeth. (*Id.* ¶¶ 16–19; Saffold Dep. (Dkt. No. 74–3) at 47–49.) Dr. Saffold contends he and his assistant reviewed the informed consent with Plaintiff, which stated that he would extract tooth 19, he would utilize numbing agents, and that complications were possible. (*Id.* ¶¶ 27–34.) Along with Dr. Saffold and his assistant, Plaintiff then signed the informed consent. (*Id.*)

Although Plaintiff takes issue with Dr. Saffold's testimony, Plaintiff has not alleged Dr. Saffold refused to provide treatment, that he delayed treatment, or that he ignored Plaintiff's complaints. To the contrary, Dr. Saffold examined Plaintiff twice, order x-rays to assess the condition of Plaintiff's teeth, diagnosed the source of Plaintiff's pain, performed an extraction after obtaining a signed informed consent form, and provided pain medication and anesthesia when appropriate. He also provided follow up care and adequately addressed Plaintiff's dry socket after the extraction. Plaintiff has presented no evidence but his own opinion that Dr. Saffold removed the "wrong" tooth or that he provided blatantly inappropriate dental care.

The evidence marshaled by Plaintiff is insufficient to support his claim that Dr. Saffold consciously disregarded a substantial risk to Plaintiff's health.

But even accepting that Dr. Saffold should have pulled tooth 20 instead of tooth 19,[2] Plaintiff's claim does not rise to the level of a constitutional violation. *See, e.g.*, *McGowan*, 612 F.3d at 641–42 (affirming dismissal of dental deliberate indifference claim against defendant for incorrectly extracting plaintiff's tooth, notwithstanding allegations plaintiff endured excruciating pain and that defendant used an ice pick to remove tooth splinters from his gums); *Williams v. Garnett*, No. 17 C 501, 2017 WL 2794293, at *3 (S.D. Ill. June 28, 2017) (dismissing deliberate indifference claim, finding extracting the wrong tooth did not suggest any deliberate indifference where the dentist believed it was causing problems and needed to be pulled); *Hall v. Gardener*, No. 10 C 539, 2011 WL 533586, at *1 (S.D. Ill. Feb. 9, 2011) (rejecting plaintiff's Eighth Amendment claim premised on an allegedly botched tooth extraction); *Kiser v. Barr*, No. 04 C 701JM, 2005 WL 1242161, at *2 (N.D. Ind. May 25, 2005) (dismissing plaintiff's claim that a dentist extracted the wrong tooth, finding it did not amount to a constitutional violation); *see also Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (finding no evidence but the plaintiff's own opinion that a dentist removed the wrong tooth, but even assuming he did, "medical malpractice does not amount to deliberate indifference"); *Prince v. Bradshaw*, No. 15 C 1700, 2016 WL 1436577, at *2 (E.D. Mo. Apr. 12, 2016) (dismissing deliberate indifference claim, explaining a "mistaken extraction of teeth does not in

---

[2] Plaintiff's position in this regard is somewhat contradictory, as Plaintiff has also asserted that Dr. Saffold's notes indicated that it was possible that *both* tooth 19 and tooth 20 would need to be extracted due to a periodontal vertical defect. (Pl.'s Resp. to ¶¶ 16–19, 49.) It is unclear how Plaintiff's claim that tooth 19 should not have been extracted can be reconciled with his assertion that Dr. Saffold failed to advise him that both teeth may need to be extracted.

and of itself establish deliberate indifference, and plaintiff alleges no state of mind that is more blameworthy than negligence, or perhaps gross negligence").

Rather, Plaintiff's evidence establishes malpractice or negligence at most. There is no evidence that Dr. Saffold "maliciously intended to cause . . . pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications." *McGowan*, 612 F.3d at 641; *see also Williams*, 2017 WL 2794293, at *3; (finding pulling the wrong tooth, even if "it was a mistake, . . . may have amounted to malpractice or negligence at worst"); *Clemmons v. Thompkins*, No. 4:12CV4-SPM/WCS, 2012 WL 882491, at *2 (N.D. Fla. Feb. 13, 2012), *report and recommendation adopted,* No. 4:12CV4-SPM/WCS, 2012 WL 898581 (N.D. Fla. Mar. 14, 2012) ("Plaintiff was examined by the dentist in response to his reported pain, Plaintiff requested that his tooth be pulled, and the dentist administered pain numbing medication and then pulled a tooth, but mistakenly pulled the wrong tooth. There is no basis to find this was an intentional act to cause Plaintiff pain, or a pain numbing medication would not have been given. The allegations show nothing more than a mistake and an act of negligence. That is not enough to state a constitutional claim."). Nor has Plaintiff alleged that Dr. Saffold chose to perform an "easier and less efficacious treatment" without exercising professional judgment. *See id.* (quoting *Estelle*, 429 U.S. at 104, n.10, 97 S. Ct. at 291, n.10; *Johnson*, 433 F.3d at 1018–19). Having carefully reviewed the evidence, we conclude that no reasonable jury could conclude that Defendant's responses to Plaintiff's dental needs amounted to deliberate indifference.

Plaintiff nevertheless contends that Dr. Saffold "admitted that [Plaintiff] should have been referred to a periodontist but failed to do so for a non-medical reason, i.e., the Will County Facility does not do that because it had no contract with a periodontist." (Pl.'s Resp. at 5.) First,

Defendant rightly points out that Plaintiff has raised this allegation for the first time, and he cannot amend his complaint through his response to a summary judgment motion. *See, e.g.*, *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); *Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 747 (N.D. Ill. 2014). Second, Plaintiff misrepresents Dr. Saffold's testimony. Dr. Saffold testified that he could refer an inmate to a periodontist, but only in the case of a dental emergency. (Saffold Dep. at 51.) He further explained that even in his private practice, he would only refer a patient to a periodontist to treat gum disease where a patient had full mouth or "massive periodontal problems," unlike Plaintiff, who was experiencing issues solely with his lower teeth. (*Id.* at 49–56.) Dr. Saffold also testified that Plaintiff's gum pocket depth was past 10 millimeters—beyond the point where a periodontist would be able to provide treatment, and would more likely advise removal of the tooth. (*Id.*) Third, Plaintiff fails to present any evidence that Dr. Saffold was in any way involved in the establishment or review of the policies and procedures at WCADF, including those related to when an inmate may be referred to a dental specialist. (Reply at 9; *see also* Saffold Dep. at 20–21, 53–54.) Nor has Plaintiff offered any evidence that it was medically necessary or appropriate to be seen by a periodontist under the circumstances. In sum, no reasonable jury, viewing Plaintiff's evidence, could find Dr. Saffold was deliberately indifferent to Plaintiff's medical needs.

## CONCLUSION

For the foregoing reasons, we grant Defendant's motion for summary judgment. (Dkt. No. 73.) It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: February 21, 2018
       Chicago, Illinois